UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

JANE DOE (T.L.M.)                                                                                 PLAINTIFF

V.                                           CIVIL ACTION NO 3:24-CV-844-DPJ-LGI

SIX CONTINENTS HOTELS, INC.,
HOLIDAY HOSPITALITY FRANCHISING LLC, AND
HIGH STREET HOTEL GROUP LLC d/b/a HOLIDAY
INN EXPRESS                                               DEFENDANTS

ORDER

This sex-trafficking civil suit against hotel franchisors and their franchisee is before the Court on two motions to dismiss [13, 25] filed under Federal Rule of Civil Procedure 12(b)(6). As explained below, the Court grants Defendants' motions to the extent that Doe has abandoned any claims under 18 U.S.C. § 2255 and disavowed a claim based on perpetrator liability. The Court also dismisses without prejudice the direct-liability claim against the franchisor defendants. The motions are otherwise denied.

I.      Facts and Procedural History

Plaintiff Jane Doe (T.L.M.) alleges that she was trafficked for sex from January 2013 to December 2014 at a Holiday Inn Express in Jackson, Mississippi. Compl. [1] ¶ 28. She believes the franchisors and franchisee of that property knew or should have known about the sex trafficking yet benefited from it by continuing to rent rooms to the trafficker. *Id.* ¶ 71. Invoking the Trafficking Victims Protection Reauthorization Act (TVPRA), Doe sued two franchisors, Six Continents Hotels, Inc. (Six Continents) and Holiday Hospitality Franchising, LLC (HHF) (collectively IHG). She also sued the franchisee for this property, High Street Hotel Group LLC d/b/a Holiday Inn Express (HSHG). Defendants seek dismissal, and the issues have been fully briefed (including supplemental briefing). Federal subject-matter jurisdiction exists.

II. Standard of Review

When considering a motion under Rule 12(b)(6), the "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (quoting *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999) (per curiam)). But "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

To overcome a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. at 555 (citations and footnote omitted). "This standard 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of' the necessary claims or elements." *In re S. Scrap Material Co., LLC*, 541 F.3d 584, 587 (5th Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).

III. Analysis

"In 2000, Congress enacted the TVPRA to prohibit 'the sex trafficking of children or adults by force, fraud, or coercion.'" *Doe (E.M.B.) v. G6 Hosp., LLC*, No. 9:23-CV-173-MJT-CLS, 2025 WL 2556104, at *3 (E.D. Tex. Feb. 3, 2025) (quoting 18 U.S.C. § 1591).[1] There have been two relevant amendments. First, "Congress amended the TVPRA in 2003 to give

---

[1] To avoid confusion when citing TVPRA cases, the Court will use the defendant's name in the short form since multiple cases use "Doe" for the plaintiff's name. When there are multiple cited cases involving the same defendant, the Court will use both parties' names in the short form.

'victims of sex trafficking the power to bring civil actions to recover damages from those who trafficked them.'" *Id.* at *4 (citing *G.G. v. Salesforce.com, Inc.*, 76 F.4th 544, 548 (7th Cir. 2023)). Then, in 2008, "Congress broadened that civil remedy to allow" suits against participants who benefit from the sex-trafficking activity. *Salesforce.com*, 76 F.4th at 548.

The statute now reads:

> An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States.

18 U.S.C. § 1595(a). Doe does not claim that Defendants are perpetrators. Pl.'s Resp. [21] at 26. She does, however, claim that they benefitted financially from participation in a sex-trafficking venture. *See* Compl. [1] ¶ 6.

"The Fifth Circuit has not substantively engaged with the beneficiary liability theory in § 1595(a) in the sex trafficking context." *Doe (K.E.C.) v. G6 Hosp., LLC*, 750 F. Supp. 3d 719, 729 (E.D. Tex. 2024). But the parties generally agree that the claim has three elements. *See* Pl.'s Mem. [21] at 11–18; IHG Mem. [14] at 4–5. A plaintiff trying to prove beneficiary liability under § 1595(a) must show the defendant "'(1) knowingly benefit[ted] financially or [received] anything of value,' (2) from participation in a venture, (3) they 'knew or should have known has engaged in' sex trafficking under § 1591." *E.S. v. Best W. Int'l, Inc.*, 510 F. Supp. 3d 420, 426 (N.D. Tex. 2021) (quoting *J.C. v. Choice Hotels Int'l*, No. 20-CV-155-WHO, 2020 WL 6318707, at *4 (N.D. Cal. Oct. 28, 2020)).[2]

---

[2] Some courts divide the participation-in-a-venture prong into two parts: participation in a venture and the venture violated the TVPRA. *Compare Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 723 (11th Cir. 2021) (listing four elements), *with H.G. v. Inter-Cont'l Hotels Corp.*, 489 F.

The parties dispute whether Doe sufficiently pleaded the knowledge and participation-in-a-venture elements. The Court therefore focuses on those issues as they apply to the direct and vicarious-liability claims against the franchisors (IHG) and the franchisee (HSHG).

A.   Direct Liability

   1.   Actual or Constructive Knowledge

The first question is whether a plaintiff has plausibly alleged a defendant "knew or should have known" that a venture violated the TVPRA. 18 U.S.C. § 1595(a). This language has led to inconsistent holdings.[3] The Court will first examine what the defendant must know and then apply that test to the pleaded facts.

   a.   Knowledge Requirement Construed

A "consensus among courts" construes § 1595(a) as imposing "a negligence standard." *Doe (S.M.A.) v. Salesforce, Inc.*, No. 3:23-CV-915-B, 2024 WL 1337370, at *15 (N.D. Tex. Mar. 28, 2024); *see also Salesforce.com*, 76 F.4th at 555 n.9 (collecting cases). That tracks § 1595(a)'s text because Congress added a constructive-knowledge component for civil liability that is not present under the TVPRA's criminal provision (§ 1591(a)).

In the tort context, "[s]hould have known" includes what "a person of reasonable prudence and intelligence or of the superior intelligence of the actor would ascertain the fact in question in the performance of his duty to another, or would govern his conduct upon the assumption that such fact exists." Restatement (Second) of Torts § 12 (Am. L. Inst. 1965).

---

Supp. 3d 697, 704 (E.D. Mich. 2020) (listing three elements) *and M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959, 964 (S.D. Ohio 2019) (listing three elements).

[3] In their initial and supplemental briefs, the parties have identified dozens of cases reaching conflicting conclusions. Many of those cases are distinguishable in some way, and none are binding. For those reasons, the Court will not examine every case cited in the briefs. There may also be times when the Court cites a case for one holding though it disagrees with that case in other respects.

***Knowledge of a specific venture.*** The first question is whether this standard requires proof that a beneficiary knew or should have known about the specific venture involving the plaintiff. The TVPRA's text suggests that it does.

Liability exists when a defendant "receiv[es] anything of value from participation in *a venture which* that person knew or should have known has engaged in *an act* in violation of this chapter." 18 U.S.C. § 1595(a) (emphasis added). Using the singular "a venture" and "an act," indicates that not just any venture will do. Instead, knowledge is linked to the "venture which" the defendant benefitted from. Thus, "the term 'a venture' has . . . not been interpreted to mean 'any venture.'" *Salesforce, Inc.*, 2024 WL 1337370, at *15 (collecting cases); *see also S.J. v. Choice Hotels Int'l, Inc.*, 473 F. Supp. 3d 147, 154 (E.D.N.Y. 2020) ("The statutory text speaks in singular terms – 'participation in *a* venture which that person . . . should have known *has* engaged in *an* act in violation of this chapter.'" (alterations in original)).

As a result, general allegations about the nation's sex-trafficking problem in hotels—though perhaps relevant background—will not satisfy pleading requirements. "[T]o allow allegations that a civil defendant was aware of sporadic sex trafficking in low-budget hotels generally to show constructive knowledge of a particular sex trafficking venture unjustifiably bridges the scienter gap between should have known and might have been able to guess." *Salesforce.com*, 76 F.4th at 557 (internal quotation marks omitted) (quoting *Choice Hotels Int'l*, 473 F. Supp. 3d at 154)).

***Knowledge of a specific victim.*** A more granular question is whether actual or constructive knowledge of the particular victim is required. In *Red Roof Inns*, the Eleventh Circuit held, "the defendant must have either actual or constructive knowledge that the venture—

5

in which it voluntarily participated and from which it knowingly benefited—violated the TVPRA *as to the plaintiff*." 21 F.4th at 725 (emphasis added).

On the other hand, the Seventh Circuit rejected the victim-specific approach in *Salesforce.com*, holding that "[i]f Congress had meant in Section 1595 that the participant must have had actual or constructive knowledge of the specific victim, it could have simply said so. It did not." 76 F.4th at 557. But the Seventh Circuit noted that its holding was fact specific. There, the venture involved Backpage.com, "the biggest and most notorious sex trafficking and pimping website in the United States." *Id.* at 549. Though the Seventh Circuit rejected a victim-specific requirement given the vast number of victims, it noted that in cases "involv[ing] the trafficking of only one victim[,] . . . knowledge of the specific victim goes hand-in-glove with knowledge of the 'venture.'" *Id.* at 557 (citing *Lundstrom v. Choice Hotels Int'l, Inc.*, No. 21-CV-619-PAB-SKC, 2021 WL 5579117, at *1–2, *6–8 (D. Colo. Nov. 30, 2021); *B.M. v. Wyndham Hotels & Resorts*, No. 20-CV-656-BLF, 2020 WL 4368214, at *5–6 (N.D. Cal. July 30, 2020)).

Doe argues that she is alleging "widespread trafficking of multiple victims by a population of traffickers at a specific hotel." Pl.'s Mem. [21] at 16. But she cites no facts pleaded in the Complaint to support that argument. Looking to her Complaint, she alleges that other victims were trafficked at this hotel *before* Doe was trafficked. Compl. [1] ¶ 56. But she does not allege facts showing that these other alleged victims were trafficked by the same person who controlled Doe or that they were all part of the same sex-trafficking venture. Without additional non-conclusory facts about the other unnamed victims/traffickers, the Court finds that Doe has not plausibly alleged a venture that went beyond her own circumstances. *See*

*Salesforce.com*, 76 F.4th at 557. Thus, she must plead facts showing actual or constructive knowledge that she was trafficked.

    ***Knowledge of sex trafficking and not merely commercial sex.*** The "TVPRA does not prohibit all commercial sex." *Doe v. Hyatt Corp.*, No. 3:24-CV-1229-N, 2025 WL 1953857, at *5 (N.D. Tex. July 15, 2025). Instead, beneficiaries violate the TVPRA when "means of force, threats of force, fraud, coercion[,] . . . or any combination of such means" are "used to cause the person to engage in a commercial sex act." 18 U.S.C. § 1591(a).

    Thus, a plaintiff must show the defendant "knew or should have known that Plaintiffs would be forced to engage in commercial sex acts *through force, fraud, or coercion*." *Salesforce, Inc.*, 2024 WL 1337370, at *17 (emphasis added); *see also J.B. v. G6 Hosp., LLC*, No. 19-CV-7848-HSG, 2020 WL 4901196, at *10 (N.D. Cal. Aug. 20, 2020) (requiring plaintiff to plead facts suggesting defendant should have known of "sex trafficking that violated the TVPRA" as opposed to other "nefarious conduct"); *see also Doe v. G6 Hosp., LLC*, No. 3:25-CV-770-D, 2025 WL 2697832, at *8 (N.D. Tex. Sept. 22, 2025) (finding it "plausible" that defendants knew or should have known plaintiff was trafficked based on her exhibiting sex-trafficking red flags), *reconsideration denied*, 2025 WL 3640992 (N.D. Tex. Dec. 16, 2025).

    b.  Has Knowledge Been Sufficiently Pleaded

    There are layers to this question. First, the Court considers whether Doe pleaded facts plausibly showing that franchisee HSHG gained the requisite knowledge. Second, it asks the same question for franchisors IHG. That said, the factual averments as to each question overlap.[4]

---

[4] HSHG did not file a separate brief supporting its motion to dismiss and instead joined IHG's initial motion and brief. *See* Mot. [25]. It also piggybacked off IHG's reply. *See* HSHG Reply [32]. There is nothing wrong with that economical approach. The Court merely notes that some

***Franchisee HSHG's knowledge.*** Doe bases her knowledge claim on the following categories of accusations: (1) the hotel industry's historic role in sex trafficking, Compl. [1] ¶¶ 31–33; (2) red flags that should alert reasonable hotels about ongoing sex trafficking, *id.* ¶ 35; (3) sex-trafficking history at Holiday Inn branded properties, *id.* ¶¶ 45–52; (4) widespread and ongoing sex trafficking at the subject hotel as reported in news articles and customer reviews, *id.* ¶¶ 53–54; and (5) widespread and longstanding trafficking of Doe that should have been apparent due to red flags, *id.* ¶¶ 55, 60.

Defendants correctly note that not all of these assertions would demonstrate notice. For example, newspaper articles or reviews after Doe was trafficked would not demonstrate notice of the venture involving her. *See* IHG Mem. [14] at 8. Nor would the industrywide history or even Defendants' history. *See id.* (citing *Doe (T.M.) v. G6 Hosp. LLC*, No. 1:23-CV-2598-MLB, 2024 WL 4457563, at *7 (N.D. Ga. Sept. 23, 2024)). But none of those things should be considered in isolation. While they may not prove actual knowledge that Doe was trafficked, they may still be relevant to the extent they provide a backdrop for what Defendants should have known based on what they did observe. *See, e.g.*, *Doe v. G6 Hosp.*, 2025 WL 2697832, at *8.

And that applies equally to the so-called "red flags." According to Doe, various governmental entities developed a list of signs that might be indicative of sex trafficking. Compl. [1] ¶ 34. She then lists 16 "warning signs and indicators of sex trafficking" within the hotel industry. *Id.* ¶ 35. Defendants say these "vague, conclusory, and boilerplate allegations" are not enough to plausibly plead the knowledge element. IHG Mem. [14] at 6. And to some

---

of the arguments addressed in this section about HSHG were presented on its behalf in IHG's briefing.

8

extent that's true. Without more, a mere list of warning signs would not make the claim plausible.

Doe does, however, offer more. First, she cites reports describing the red flags that serve as warning signs of sex trafficking. *See* Compl. [1] at 7 nn. 6–7;[5] *id.* at 7 n.6.[6] Second, she offers reports and academic articles detailing the overlap between commercial sex and sex trafficking. *Id.* at 9 n.10.[7]

Defendants say that's still insufficient because "the Complaint does not actually allege that any such industry-specific red flags of trafficking were present at the Hotel." IHG Reply [23] at 4 (quotation marks omitted). But Doe does claim in her Complaint that some of the 16 warning signs factually existed as to her at the subject hotel:

    a.    The hotel rooms in which she was trafficked were frequently paid for with cash or prepaid cards;

    b.    Other girls were trafficked at the same hotel at the same time as Jane Doe (T.L.M.);

    c.    Even though Jane Doe (T.L.M.) and her trafficker would stay for multiple days at a time, housekeeping was kept away by using the "Do Not Disturb" door hanger;

---

[5] *Human Trafficking Response Guide*, Blue Campaign, https://www.dhs.gov/sites/default/files/2025-06/25_0605_bc_hospitality-toolkit-v02-508.pdf (last visited Mar. 10, 2026) (listing red flags such as continued use of "do not disturb" signs, frequent monitoring and loitering by johns, and constant flow of people).

[6] *Red Flags for Hotel & Motel Employees*, Love146, https://love146.org/wp-content/uploads/2017/04/Hospitality-Red-Flag-and-Reporting-Love146.pdf (last visited Mar. 10, 2026).

[7] Michael Shively et al., *A National Overview of Prostitution and Sex Trafficking Demand Reduction Efforts, Final Report*, Nat'l Inst. Just. (Apr. 30, 2012), https://endsexualexploitation.org/wp-content/uploads/Overview-of-Demand-Reduction-Efforts-2012.pdf; Dorchen A. Leidholdt, *Prostitution and Trafficking in Women: An Intimate Relationship*, *in Prostitution, Trafficking, and Traumatic Stress* 167, 175–76 (Melissa Farley ed., 2004), https://www.prostitutionresearch.com/Leidholdt%20Prostitution%20and%20Trafficking%20in%20Women.pdf.

  d.  Housekeeping staff was prevented from entering the room for regular cleaning, towel exchange and other standard room services;

  e.  The trafficker was often present with Jane Doe (T.L.M.) at check in and would linger around the hotel or in the parking lot while she was with a john;

  f.  Management and/or staff would solicit services from Jane Doe (T.L.M.) and other girls being trafficked;

  g.  There was heavy foot traffic in and out of Jane Doe (T.L.M.)'s room involving men who were not hotel guests; [and]

  h.  Jane Doe (T.L.M.) had multiple johns every day. These individuals entered and left at unusual hours and were present at the hotel for brief periods of time . . . .

Compl. [1] ¶ 60. Doe also adds that this went on from January 2013 through December 2014 and that the number of times she was trafficked during that time is "incalculable." *Id.* ¶ 30.

  The Court must view alleged facts in the light most favorable to Doe. *See Martin K. Eby Constr. Co.*, 369 F.3d at 467. And in that light, she has plausibly pleaded widespread and longstanding commercial sex at the subject property specific to her.

  But that does not end the inquiry. As Defendants properly note, commercial sex and sex trafficking are distinct under § 1595(a). *See* IHG Mem. [14] at 8. This is the closest question presented, but the Court concludes that Doe has said enough. First, the reports Doe cites indicate that the red flags she allegedly exhibited are indicative of sex trafficking. *See* Blue Campaign, *supra* note 5, at 5. Second, those same sources discuss the significant overlap between sex trafficking and commercial sex. *See, e.g.*, Leidholdt, *supra* note 7, at 175–76. Third, Doe alleges which red flags existed in this case, like her trafficker's presence and method of payment. *See generally* Compl. [1] ¶ 60. Fourth, she claims her trafficker "would beat her" and "engaged in a pattern of control and intimidat[ion]." *Id.* ¶ 26. Fifth, the substantial volume of johns she was trafficked to at the subject hotel over a nearly two-year period makes it more plausible that

10

the local employees should have known she was under coercion, especially if some of those employees and managers solicited Doe themselves, as she alleges. *Id.* ¶ 60(f); *see K.E.C. v. G6 Hosp.*, 750 F. Supp. 3d at 737–39 (finding allegations that employees "were aware of the illegal activities" taking place at hotel sufficiently pleaded knowledge element).

Standing alone, these individual allegations would likely fall short, but the Court considers the Complaint as a whole. *See Gulf Coast Hotel-Motel Ass'n v. Miss. Gulf Coast Golf Course Ass'n*, 658 F.3d 500, 506 (5th Cir. 2011) ("While the allegations in this complaint that the Golf Association's anticompetitive acts 'substantially affected interstate commerce' are not sufficient on their own, the complaint here read as a whole goes beyond the allegations rejected in *Twombly* and *Iqbal*.").

Viewed as a whole, the Complaint satisfies Federal Rule of Civil Procedure 9(b), which allows plaintiffs to plead knowledge "generally." Fed. R. Civ. P. 9(b). And as noted, Rule 12(b)(6) "'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of' the necessary claims or elements." *In re S. Scrap Material Co.*, 541 F.3d at 587 (quoting *Twombly*, 550 U.S. at 556). Under these standards, and viewing the facts in the light most favorable to Doe, the Court finds that she has demonstrated knowledge by franchisee HSHG.

***Franchisors' knowledge.*** IHG faces potential liability in two ways—direct and vicarious. For direct liability, Doe says IHG knew or should have known about the sex trafficking for the same reasons cited for HSHG and because IHG required HSHG to report any such incidents to it. *See* Pl.'s Mem. [21] 18–19.

Here again, Doe must show actual or constructive knowledge of this alleged venture. News articles or online reviews of unrelated dates or incidents would not plausibly indicate

11

knowledge of Doe's sex trafficking. Nor would the reports IHG allegedly required from HSHG. Doe claims HSHG ignored those reporting duties, and she didn't offer any other facts suggesting that HSHG in fact reported her sex trafficking to IHG. *See Doe v. Wyndham Hotels & Resorts*, No. 8:23-CV-1554-JVS, 2023 WL 8888836, at *4–5 (C.D. Cal. Nov. 13, 2023) ("Doe alleges that Wyndham's policies required the hotel staff at Days Inn to report such 'obvious signs' of sex trafficking directly to Wyndham. . . . [But] 'the complaint lacks any allegations that the hotel staff who witnessed signs of Plaintiff's sex trafficking reported these signs to Defendants, which could plausibly indicate [the franchisors'] knowledge.'").

In short, there are no factual allegations that IHG received any reports specific to this alleged venture. The Court may not consider conclusory assertions, and without facts, Doe has not plausibly suggested that IHG knew or should have known that Doe was being sex trafficked at the subject hotel. *See, e.g.*, *Salesforce, Inc.*, 2024 WL 1337370, at *12. For this reason, the Complaint fails to state a direct-liability claim against IHG. That does not, however, mean that IHG cannot face vicarious liability as discussed below.

    2.    Participation Element

Finding no direct-liability claim against IHG, the Court now considers the second element as to HSHG, whether it was a "participa[nt] in a venture" that violated the TVPRA. *Salesforce.com*, 76 F.4th at 553; *Red Roof Inns*, 21 F.4th at 724. Unfortunately, the TVPRA defines neither "participation" nor "venture" for purposes of civil liability under § 1595(a). *See Doe 1 v. Apple Inc.*, 96 F.4th 403, 414 (D.C. Cir. 2024).

Congress did define those terms for the TVPRA's criminal component. Under § 1591(e)(4), "[t]he term 'participate in a venture' means knowingly assisting, supporting, or facilitating" a TVPRA violation. 18 U.S.C. § 1591(e)(4). And under § 1591(e)(6), "[t]he term

12

'venture' means any group of two or more individuals associated in fact, whether or not a legal entity." 18 U.S.C. § 1591(e)(6).

Normally, "words repeated in different parts of the same statute generally have the same meaning." *Law v. Siegel*, 571 U.S. 415, 422 (2014) (citation omitted). But circuit courts have found it improper to "import" § 1591(e)(4)'s definition of "participation in a venture" into § 1595(a). *Salesforce.com*, 76 F.4th at 558 (citing *Red Roof Inns*, 21 F.4th at 724). This Court agrees because that definition fails to cover the constructive-knowledge avenue for civil liability under the TVPRA and because Congress expressly limited the definitions found in § 1591(e) of the criminal code to "this section," i.e., § 1591. *Id.* at 558–59.

The definition of "venture" found in § 1591(e)(6) is also limited in scope to "this section." 18 U.S.C. § 1591(e). But unlike the definition of "participation in a venture," the "venture" definition does not separately conflict with the constructive-knowledge standard under § 1595(a). Not surprisingly, some courts have used the criminal definition of "venture" found in § 1591(e)(6) to define "venture" when applying the civil remedies under § 1595(a). *See Ricchio v. McLean*, 853 F.3d 553, 556 (1st Cir. 2017) (Souter, J.). *Contra Apple Inc.*, 96 F.4th at 415 n.5 (rejecting criminal definition of "venture" based on § 1591(e)'s limiting language).

In any event, if Congress intended to limit the § 1591(e) definitions to that section, it failed to fill the void when it used "participation in a venture" again in § 1595(a). That left the construction to the courts, and the results have been somewhat inconsistent. The two most notable approaches come from the Seventh and Eleventh Circuits.

First, the Seventh Circuit held in *Salesforce.com* that "participation" means "culpable assistance to a wrongdoer, which requires only a desire to promote the wrongful venture's success, . . . though Section 1595 does not require actual knowledge of criminal wrongdoing."

13

76 F.4th at 559 (internal quotation marks omitted) (quoting *Doe v. GTE Corp.*, 347 F.3d 655, 659 (7th Cir. 2003)).  Thus, the venture in which the beneficiary participated "need not be primarily a sex-trafficking venture and the civil defendant itself need not have committed a criminal violation of Section 1591." *Id.*  "It is the venture that must violate Section 1591, and not the participant." *Id.*

> The Seventh Circuit also found that
>
> a plaintiff may sufficiently allege such "culpable assistance" by showing "a continuous business relationship" between the participant and the trafficker. Where the participant provides assistance, support, or facilitation to the trafficker through such a "continuous business relationship," a court or jury may infer that the participant and trafficker have a "tacit agreement" that is sufficient for "participation" under Section 1595.

*Id.* (citations omitted) (citing *Wyndham Hotels & Resorts*, 425 F. Supp. 3d at 970–71; *Ricchio*, 853 F.3d at 555 (concluding that "participation" can be inferred, in part, where trafficker and civil defendants—the owners of hotel trafficker used for his venture—had prior similar dealings)).[8]

The Eleventh Circuit reached a slightly different conclusion in *Red Roof Inns* by focusing on the word "venture." *Red Roof Inns*, 21 F.4th at 724–25.  Based on dictionary definitions, the court held that a "venture" is "an undertaking or enterprise involving risk and potential profit." *Id.* (citing *Venture*, Black's Law Dictionary (11th ed. 2019) (defining venture as "[a]n undertaking that involves risk; esp., a speculative commercial enterprise"); *Venture*, Oxford English Dictionary 520 (2d ed. 1989) (defining venture as "[a]n enterprise of a business nature in

---

[8] In dicta, the Fifth Circuit concluded that the TVPRA "simply requires that Salesforce not sell its [cloud-based software] tools and operational support to a company it knew (or should have known) was engaged in sex trafficking." *A.B. v. Salesforce, Inc.*, 123 F.4th 788, 797 (5th Cir. 2024).  The Court did not offer a deep construction of "participation in a venture" to reach this conclusion, but the analysis seems generally consistent with the Seventh Circuit's approach.

which there is considerable risk of loss as well as chance of gain; a commercial speculation")). Under that construction, "the phrase 'participation in a venture' requires that the [plaintiffs] allege that the franchisors took part in a common undertaking or enterprise involving risk and potential profit." *Id.* at 725.[9]

Here, Defendants urge the Court to follow the Eleventh Circuit and argue that there was no participation in a venture. IHG Mem. [14] at 15–16. But at the Rule 12(b)(6) stage, district courts within the Fifth Circuit "have found little substantive difference between [the Seventh and Eleventh Circuits'] approaches." *Doe v. G6 Hosp.*, 2025 WL 2697832, at *6 (Fitzwater, J.) (citing *Salesforce, Inc.*, 2024 WL 1337370, at *13 (Boyle, J.)); *see J.H. v. Paramount Hosp. LP*, No. 2:25-CV-11-Z, 2025 WL 2201051, at *4 (N.D. Tex. Aug. 1, 2025).

"Both definitions require that the alleged participant have an ongoing interest in the success of a specific venture and elect to further the ends of the venture beyond what would reasonably be expected in an ordinary commercial transaction." *Salesforce, Inc.*, 2024 WL 1337370, at *11–13 (citing *Salesforce.com*, 76 F.4th at 559–60; *Red Roof Inns*, 21 F.4th at 725); *see also K.H. v. Riti*, No. 23-11682, 2024 WL 505063, at *2–4 (11th Cir. Feb. 9, 2024); *Ricchio*, 853 F.3d at 555–58; *Apple Inc.*, 96 F.4th at 416.

The Court is not necessarily convinced that either the Seventh or Eleventh Circuit construction is entirely accurate. But "to the extent that there is a meaningful difference between these two approaches, the court's conclusion is the same regardless which one applies." *Doe v. G6 Hosp.*, 2025 WL 2697832, at *6; *see also Paramount Hosp.*, 2025 WL 2201051, at *4

---

[9] This construction differs from the definition of "venture" in § 1591(e)(6)—"any group of two or more individuals associated in fact." 18 U.S.C. § 1591(e)(6). While Congress limited its statutory definition to criminal cases under § 1591(a), § 1591(e)(6) does suggest another possible definition.

(finding similar allegations sufficient under both Seventh and Eleventh Circuits' approaches); *K.E.C. v. G6 Hosp.*, 750 F. Supp. 3d at 731.[10]

As addressed above, Doe has successfully pleaded that franchisee HSHG had actual or constructive knowledge that she was being trafficked in its hotel. *See supra* at 8–11. Yet HSHG continued renting a room to the alleged trafficker for two years. *See* Compl. [1] ¶ 66. Hotel employees and managers allegedly participated in the solicitation. *See id.* ¶ 60(f). These allegations and others from the Complaint reflect "'a continuous business relationship' between the participant and the trafficker" over a two-year period that "facilitate[ed]" the alleged trafficking. *Salesforce.com*, 76 F.4th at 559. HSHG also received something "of value," and thus profit, for its participation—i.e., rent. 18 U.S.C. § 1595(a). And it is plausible that facilitating sex trafficking at a hotel comes with some risk—including the risk of criminal or civil liability under the TVPRA, which could also cause financial risk. *See Red Roof Inns*, 21 F.4th at 725 (defining "participation in a venture" to include a "common undertaking or enterprise *invoking risk* and potential profit" (emphasis added)).

The Court notes Defendants' argument that ordinary arms' length transactions cannot violate the TVPRA. IHG Mem. [14] at 15. But "statutory words are often known by the company they keep." *Lagos v. United States*, 584 U.S. 577, 582 (2018). And here, "participation in a venture" must be read together with the next phrase—"*which* that person knew or should have known has" violated the TVPRA. 18 U.S.C. § 1591(a) (emphasis added). This distinguishes a typical arm's length transaction when a hotel rents a room for legitimate purposes. The rooms here were allegedly rented for a specific unlawful purpose about which

---

[10] As this case advances from averments to supported facts, the Court may be forced to put a finer point on this construction. For now, it finds that dismissal is unwarranted even under the test Defendants advance.

HSHG had actual or constructive knowledge. *See* Compl. [1] ¶¶ 66, 71. And unlike most hotel transactions, this alleged venture went on for two years. *See id.* ¶ 28. As noted in *Doe v. G6 Hospitality*, such arrangements go "beyond what would reasonably be expected in ordinary commercial transactions, to provide a venue for their trafficking." 2025 WL 2697832, at *7.

Again, the Court must accept all well-pleaded facts as true and view them in the most favorable light for Doe. *See Martin K. Eby Constr. Co.*, 369 F.3d at 467. Under that standard, Doe has provided "'enough fact to raise a reasonable expectation that discovery will reveal evidence of' the necessary claims or elements." *In re S. Scrap Material Co., LLC*, 541 F.3d at 587 (quoting *Twombly*, 550 U.S. at 556). It is therefore plausible that HSHG "receiv[ed] something] of value from participation in a venture which [it] knew or should have known has engaged in an act in violation of" the TVPRA. 18 U.S.C. § 1595(a).[11]

B.  Vicarious Liability

As noted, Doe failed to plead direct liability against IHG, but she also pursues a vicarious-liability claim against that entity. Compl. [1] ¶¶ 88–92. To start, "the Court finds that the TVPRA allows for vicarious liability." *Wyndham Hotels & Resorts*, 2024 WL 4224915, at *6. "Although the TVPRA does not explicitly address the issue of vicarious liability, statutes are

---

[11] Other courts from this circuit have reached the same conclusion under similar facts, denying motions to dismiss when continuous business relationships existed between sex traffickers and hotel-industry participants. *See, e.g., K.E.C. v. G6 Hosp.*, 750 F. Supp. 3d at 734 (denying hotel franchisor's motion to dismiss because the plaintiff alleged facts linking the franchisor to plaintiff's trafficker); *id.* at 731 (noting that "there is a general consensus that an overt act in furtherance of sex trafficking is not required for a defendant to 'participate[] in a venture'" (alteration in original) (citation omitted)); *Hyatt Corp.*, 2025 WL 1953857, at *3 (Godbey, C.J.) (holding hotel franchisees participated in a venture but not hotel franchisors); *id.* at *4 (concluding plaintiff plausibly pleaded owner-operators of hotel had participated in venture based on allegations that they had implicit agreement with traffickers and provided them designated area of hotel); *Paramount Hosp.*, 2025 WL 2201051, at *4 (finding similar allegations sufficient under both Seventh and Eleventh Circuits' approaches).

presumed not to disturb the common law, unless the language of the statute is clear and explicit for this purpose." *Id.* (citing *J.M. v. Choice Hotels Int'l, Inc.*, No. 2:22-CV-672-KJM-JDP, 2022 WL 10626493, at *5 (E.D. Cal. Oct. 18, 2022)). "Indirect liability is a separate consideration from beneficiary liability under the TVPRA, which is a form of direct liability." *K.E.C. v. G6 Hosp.*, 750 F. Supp. 3d at 732. IHG does not appear to suggest otherwise.

IHG's primary argument—relegated to a footnote—is that Doe's vicarious-liability claim fails for pleading no underlying TVPRA violation. IHG Mem. [14] at 23 n.7. Because the Court has found a properly stated TVPRA claim, it must reject this argument. The vicarious-liability claim against IHG survives its motion.

C.   Leave to Amend

The Court found that Doe failed to adequately plead IHG's knowledge, an essential element of the direct-liability claim against the franchisor. But even when a party "fail[s] to meet the specific pleading requirements[, that] should not automatically or inflexib[ly] result in dismissal of the complaint with prejudice to re-filing." *Hart v. Bayer Corp.*, 199 F.3d 239, 248 n.6 (5th Cir. 2000). "Although a court may dismiss [a] claim, it should not do so without granting leave to amend, unless the defect is simply incurable or the plaintiff has failed to plead with particularity after being afforded repeated opportunities to do so." *Id.*

In this case, it is not clear whether the defect is incurable. So as in every such case, the Court will give Doe an opportunity to seek leave to amend. If she attempts amendment, she must file a motion under Federal Rule of Civil Procedure 15 and Uniform Local Rule 15 within 14 days of this order.

IV.     Conclusion

The Court has considered all arguments, including the additional authority presented in the supplemental briefs.  Those arguments not specifically addressed would not alter the results.  For the foregoing reasons, the Court grants Defendants' motions to the extent that Doe has abandoned any claims under 18 U.S.C. § 2255 and disavowed a claim based on perpetrator liability.  The Court also dismisses without prejudice the direct-liability claim against IHG.  The motions to dismiss [13, 25] are otherwise denied, and Doe is given 14 days from the date of this Order to seek leave to amend.

**SO ORDERED AND ADJUDGED** this the 13th day of March, 2026.

*s/ Daniel P. Jordan III*
UNITED STATES DISTRICT JUDGE